UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CORTRANS LOGISTICS, LLC SUBSTITUTED PER ORDER OF 6/15/2018, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:17-cv-02033-JPH-DLP |
| LANDSTAR LIGON, INC. a Delaware Corporation, AY GLOBAL, LLC a North Carolina Limited Liability Company, DOES 1 THROUGH 10 inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| CORTRANS LOGISTICS, LLC a Georgia Limited Liability Company, | ) ) ) | |
| Cross Claimant, | ) ) | |
| v. | ) ) | |
| AY GLOBAL, LLC a North Carolina Limited Liability Company, LANDSTAR LIGON, INC. a Delaware Corporation, | ) ) ) ) ) | |
| Cross Defendants. | ) ) | |
| CORTRANS LOGISTICS, LLC a Georgia Limited Liability Company, | ) ) ) | |
| Third Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| WESTERN INDIANA ENTERPRISES, INC., | ) | |

```
                                    )
              Third Party          )
              Defendant.           )
```

## ORDER GRANTING DEFENDANTS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT

CorTrans Logistics, LLC brought this action to recover the value of a cell-phone shipment that was stolen while in transit.  Defendants Landstar and Western Indiana Enterprises (together, "Landstar Defendants") seek partial summary judgment in their favor limiting damages to $100,000.  The Court concludes that the Carmack Amendment governs the parties' limitation-of-liability provisions and that the Landstar Defendants' liability is contractually limited to $100,000.  Therefore, the Landstar Defendants' motion for partial summary judgment is **GRANTED**.  Dkt. [96].

## I.
## Facts and Background

Because the Landstar Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A.    The Parties' Contractual Relationship

### 1.    The Transportation Services Agreement

CorTrans and Landstar are both motor carriers.  Dkt. 102-1 at 3 (Brown Dep. at 13); dkt. 102-3 at 1–2.  On January 14, 2009, they entered into a Transportation Services Agreement ("Agreement") for Landstar to provide

freight-transportation services to CorTrans.  Dkt. 102-3.  The Agreement renewed annually unless terminated by either party and prohibits Landstar from subcontracting its services.  *Id.* at 3.

The Agreement acknowledges the parties' waiver of certain statutory rights and remedies, *id.* at 1, and limits Landstar's maximum liability for cargo loss to $100,000:

> 9.40 CARRIER'S MAXIMUM LIABILITY FOR CARGO LOSS OF, OR DAMAGE TO PRODUCT (S), SHALL NOT EXCEED $100,000 PER SHIPMENT. FURTHERMORE, CORTRANS AGREES, SUBJECT TO THE TERMS OF THIS AGREEMENT, THAT 49 U.S.C. 14706, SHALL BE CORTRANS' EXCLUSIVE REMEDY FOR ANY CLAIM FOR LOSS OF OR DAMAGE TO PRODUCT. WHEN THE VALUE OF ANY TRUCKLOAD SHIPMENT IS IN EXCESS OF $100,000 AND CORTRANS WISHES THE CARRIER TO ASSUME INCREASED LIABILITY, CORTRANS SHALL NOTIFY THE CARRIER IN WRITING PRIOR TO THE TENDER OF SHIPMENT THE AMOUNT OF COVERAGE REQUIRED. THE VALUE SHALL ALSO BE NOTATED ON THE BILL OF LADING. IF THE CARRIER ELECTS TO HANDLE SUCH HIGH VALUE SHIPMENT, THE CARRIER WILL SO ADVISE CORTRANS. THE CARRIER WILL THEN OBTAIN THE INCREASED CARGO INSURANCE REQUIRED AND THE COST OF SUCH ADDITIONAL INSURANCE WILL BE INCLUDED ON THE FREIGHT BILL AND SHOWN AS A SEPARATE CHARGE. VERIFICATION AND CONFIRMATION OF THE CARRIER'S ASSUMPTION OF THIS HIGHER CARGO LIABILITY OBLIGATION WILL BE EVIDENCED WITH THE CERTIFICATE OF INSURANCE ISSUED FOR SUCH SHIPMENT. . . . Regardless of the actual form of freight receipt issued, all shipments tendered under this Agreement shall be subject to the terms and conditions contained in a Uniform Straight Bill of Lading . . . . To the extent that the terms of the bill of lading conflict with this agreement, the terms of this agreement shall prevail.

*Id.* at 4–5.

On November 21, 2014, the parties amended the liability limitation clause to allow CorTrans to request "a higher limitation on liability" up to $250,000 for cargo loss on a case-by-case basis:

3

A. Section 9.40 of the Agreement is amended to clarify Carrier's maximum liability. From time-to-time, the Parties may agree on a higher limitation of liability for particular shipments. Such agreement shall be made in writing via a rate confirmation, which shall:

 a. Specify the increased limitation of liability, which may be up to, but not more than, $250,000 per shipment;

 b. Include the pricing for the shipment, including transportation costs and any additional costs for increased liability coverage; and

 c. Be signed by an authorized representative of each Party.

Except as set forth in this Amendment, the Agreement is unaffected and shall continue in full force and effect in accordance with its terms. If there is conflict between this amendment and the Agreement or any earlier amendment, the terms of this amendment will prevail.

*Id.* at 9.

## 2. The Truckload Pricing Agreement

The parties also entered into a Truckload Pricing Agreement, which was effective from March 1, 2016 through March 31, 2017.  Dkt. 102-7.  The Truckload Pricing Agreement included the team pricing rates for each load and addressed CorTrans' ability to obtain additional insurance:

Value: Minimum of $100k motor Cargo coverage required per load. At CorTrans discretion, additional coverage of a maximum of $250k may be requested. CorTrans agrees to pay $124.00 to ensure $250k coverage when necessary/requested.

Dkt. 102-7 at 3.

## B. The May 19, 2016 Cellphone Shipment

On January 6, 2016, Katie Frost—CorTrans' Director of Transportation—sent an email requesting the maximum $250,000 coverage for several cellphone shipments, including the shipment at issue that was transported and stolen on May 19, 2016 (the "Shipment").  Dkt. 102-5 at 10.  On May 18, 2016,

4

CorTrans issued a Rate Confirmation for the Shipment that was signed by one of Landstar's representatives.  Dkt. 102-8.  The Rate Confirmation did not contain any information about limitation of liability.  *Id.*  CorTrans also sent Landstar a "Special Circumstance Standards of Care" form, which listed various handling and security procedures for the Shipment.  Dkt. 102-9.

Landstar brokered the Shipment to AY Global.  Dkt. 102-2 at 9.  An AY Global driver picked up the Shipment, signed the bill of lading, and drove about thirty miles to a truck stop in Whiteland, Indiana.  Dkt. 102-11 at 3–5 (Loskhin Dep. at 25, 36, 41).  While the driver was inside the truck stop, the truck and the trailer containing the Shipment were stolen.  *Id.* at 9–10 (52, 54).

## C.   Procedural History

CorTrans' complaint alleges state-law claims for (1) breach of contract, (2) negligence, (3) breach of bailment, and (4) conversion.  Dkt. 1-2 at 3–12. Landstar removed the complaint to this Court.  Dkt. 1.  CorTrans seeks the value of the shipment—which it values at more than $1.3 million—and other damages.  *See* dkt. 1-2; dkt. 105.[1]

The Landstar Defendants have moved for partial summary judgment, arguing that their damages are limited to $100,000.  Dkt. 96.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] The crossclaims and third-party claims are not relevant to this motion.

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must

inform the court "of the basis for its motion" and specify evidence

demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this

burden, the nonmoving party must "go beyond the pleadings" and identify

"specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the

evidence "in the light most favorable to the non-moving party and draw[s] all

reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation

omitted).

### III.
### Analysis

#### A.    The Carmack Amendment

The Carmack Amendment "provides shippers with the statutory right to

recover for actual losses or injuries to their property caused by carriers

involved in the shipment."  *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 286

(7th Cir. 1997) (citing 49 U.S.C. § 14706(a)(1)).  This creates a "nationally

uniform rule of carrier liability concerning interstate shipments and preempt[s]

all state and common law remedies covering this subject."  *N. Am. Van Lines v.*

*Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996); *see* 49 U.S.C. § 14706.

But that uniform liability for carriers does not extend to brokers.  *See*

*REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 698 (7th Cir.

2008); *Transcorr Nat'l Logistics, LLC v. Chaler Corp.*, No. 1:08-cv-00375-TAB-

SEB, 2008 WL 5272895, at *2–3 (S.D. Ind. Dec. 19, 2008).  For the Carmack

Amendment, "'motor carrier' means a person providing motor vehicle

transportation for compensation."  49 U.S.C. § 13102(14).  "Broker," by

contrast, "means a person, other than a motor carrier or an employee or agent

of a motor carrier that as a principal or agent sells, offers for sale, negotiates

for, or holds itself out . . . as selling, providing, or arranging for, transportation

by motor carrier for compensation."  49 U.S.C. § 13102(2); *see also* 49 C.F.R. §

371.2(a).  Whether a person is considered a broker or a carrier depends on the

nature and context of a specific transaction:

> Motor carriers, or persons who are employees or bona fide agents of
> carriers, are not brokers within the meaning of this section when
> they arrange or offer to arrange the transportation of shipments
> which they are authorized to transport and which they have
> accepted and legally bound themselves to transport.

49 C.F.R. § 371.2(a).  The key distinction is thus the acceptance of legal

responsibility to transport the shipment.  *See id.*; *Brunner v. Beltmann Grp.*

*Inc.*, No. 1:19-cv-03396, 2020 WL 635905, at *17 (N.D. Ill. Feb. 11, 2020);

*Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300–01 (11th

Cir. 2018).

### B.    Landstar was a Carrier with Respect to the Shipment

CorTrans argues that it is not limited to the Carmack Amendment's

remedies but can pursue state causes of action because the Landstar

Defendants were acting as "brokers" rather than "motor carriers" for purposes

of the Shipment.  Dkt. 101 at 11–13.  CorTrans asserts that it is "undisputed

that Landstar was *authorized*" to act as a motor carrier, but that there's a

"genuine issue of material fact as to whether Landstar actually *acted* as a carrier." Dkt. 101 at 13.  CorTrans contends that a reasonable jury could find that the Landstar Defendants acted as brokers because (1) they brokered the Shipment to "AY, an independent third-party motor carrier"; (2) they had no "custody, control, or possession of the" Shipment; and (3) Landstar's "Load Confirmation" identified the carrier as AY Global.  *Id.* at 11–13.

Whether the Landstar Defendants were acting as carriers or brokers turns on the relationship between CorTrans and Landstar and what Landstar "holds itself out to be." *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, 2011 WL 671747, at *4 (S.D.N.Y. Feb. 18, 2011) (citing *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003)). Here, the Agreement and contractual relationships show that Landstar acted as a carrier for the Shipment.

The Agreement defined Landstar as "CARRIER."  Dkt. 102-3 at 2.  It also required Landstar to provide transportation:

> CARRIER possesses the expertise, qualified personnel, facilities, equipment and underlying authority to properly and lawfully transport freight by motor vehicle for hire only to those points authorized to be handled direct by the Carrier. . . . CARRIER will transport commodities . . . between points and places in the United States, only to those points authorized to be handled direct by the Carrrier.

*Id.* Landstar Defendants therefore accepted and legally bound themselves to transport the Shipment.  *See id.*  Similarly, the Rate Confirmation, dkt. 102-8, and Special Circumstances Standards of Care identify and refer to Landstar as the "carrier," dkt. 102-9.

8

There also was no contract between CorTrans and AY Global, which ultimately transported the Shipment.  Dkt. 98-4 at 6–7; *see* dkt. 98-7 (load confirmation between Landstar and AY Global).  Nor did CorTrans authorize Landstar to contract with AY Global or know that AY Global was involved in transporting the Shipment until after it was stolen.  *See* dkt. 98-4 at 5–7.  A carrier is not considered a broker just because it arranges for another company to transport a shipment.  *See, e.g., Eastco Intern. Corp. v. Coyote Logistics, LLC,* 2009 WL 5125193, at *2–3 (N.D. Ill. 2009) ("[C]arriers do not become brokers just because they arranged for someone else to transport a shipment they 'accepted and [are] legally bound themselves to transport.'" (citing 49 C.F.R. § 371.2(a)); *Mach Mold Inc. v. Clover Assocs.*, 383 F. Supp. 2d 1015, 1029–30 (N.D. Ill. Aug. 2005).

CorTrans cites several cases where courts denied summary judgment because of contested facts relating to whether, at the time of the loss, the defendant was acting as a carrier or broker.  Dkt. 101 at 13–14.  Those cases are not binding and regardless, they are distinguishable.  For example, in *Hewlett–Packard v. Brother's Trucking Enterprises*, the court found that triable issues of fact existed as to whether a defendant acted as motor carrier or broker when that defendant was contracted to be a broker but exerted some measure of control over the drivers.  373 F. Supp. 2d 1349, 1350, 1352 (S.D. Fla. 2005).  Here, by contrast, the Landstar Defendants were contracted to be a motor carrier, dkt. 102-3, and they agreed to Special Circumstance Standards of Care about how the Shipment would be transported, dkt. 102-9; dkt. 98-4 at

4–5.  There is therefore no designated evidence that would allow a reasonable jury to find that the Landstar Defendants were a broker.[2]

This case is more like *Travelers Insurance v. Panalpina, Inc*, No. 08 C 5864, 2010 WL 3894105, at *6 (N.D. Ill. Sep. 30, 2010).  There, the company at issue had a shipment "dispatch[ed]" to it and was to "deliver or transfer" the shipment.  *Id.* at *1.  The company then subcontracted delivery to a third party. *Id.*  The company argued that it was not a carrier because it held a broker's license, retained the third-party, and never took possession of the cargo.  *Id.* at *5.  The court held that the "undisputed facts establish that [the company] was a carrier" because: (1) the delivery order indicated that the company would "deliver" the shipment; (2) the original shipper perceived the company as the party responsible for delivery; and (3) the company did not inform the shipper that a third-party would make delivery, and the shipper did not know that the third-party was involved until after the shipment was damaged.  *Id.* at *6.  For those reasons, the company could not be a broker under the Carmack Amendment.  *Id.*

So too here.  Landstar assumed responsibility for the Shipment.  Dkt. 102-3 at 2.  The Agreement identified Landstar as the carrier and imposed

---

[2] The other cases that Cortrans cite are the same as *Hewlett–Packard* because the companies at issue were hired as brokers rather than carriers.  *See Consol. Freightways Corp. v. Travelers Ins. Co.*, No. 00-CV-20726, 2003 WL 22159468, at *1, 6 (N.D. Cal. Mar. 28, 2003) (finding triable issues of fact when a company was hired as a broker but also performed some transportation functions); *Just Take Action, Inc. v. GST (Americas) Inc.*, No. 04-3024 ADM/RLE, 2005 WL 1080597, at *1, 5 (D. Minn. May 6, 2005) (finding triable issues of fact when the company was hired as a broker to "arrange transportation" but also "drafted the bill of lading and directed how the shipment would take place").

obligations on Landstar as the carrier.  *See* dkt. 102-3.  CorTrans also (1) believed Landstar was responsible for transporting the Shipment, *see id.*; dkt. 102-8; dkt. 102-9, (2) did not contract with AY Global, dkt. 98-4 at 5–6, and (3) did not know that AY Global was involved with the Shipment until after it was stolen, *id.*  Landstar remained CorTrans' sole point of contact at all relevant times.  *See* dkt. 102-4 at 14–17.  For these reasons, Landstar was a carrier—not a broker—with respect to the Shipment.  CorTrans' state law causes of action are therefore preempted by the Carmack Amendment.  *See Gordon*, 130 F.3d at 284.[3]

### C.    Limitation of Landstar's Liability

Under the Carmack Amendment, the default rule is that carriers are strictly liable for the "actual loss or injury to the property caused by" the carrier.  49 U.S.C. § 14706(c)(1)(A).  However, liability may be limited "by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation."  *Id.*; *see Pinkerton*, 89 F.3d at 456.  To limit liability this way, a carrier must (1) "obtain the shipper's agreement as to his choice of liability"; (2) "give the shipper a reasonable opportunity to choose between the two or more levels of liability"; and (3) "issue a receipt or bill of lading prior to moving the shipment."  *Nipponkoa Ins. Co. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012)

---

[3] The Agreement also identifies the Carmack Amendment, 49 U.S.C. § 14706, as "CORTRANS' EXCLUSIVE REMEDY FOR ANY CLAIM FOR LOSS OF OR DAMAGE TO PRODUCT."  Dkt. 102-3 at 4–5.  Because for the reasons explained above Landstar is a "carrier" under the Carmack Amendment, the Court does not consider whether this provision also limits CorTrans to Carmack Amendment remedies.

(quoting *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987)).

The Landstar Defendants contend that CorTrans' recovery for the Shipment is limited by the parties' contractual relationship under the Carmack Amendment.  Dkt. 97 at 8.  CorTrans argues it is entitled to recover its actual loss—the full value of the Shipment—because the Agreement and Amendment do not satisfy the *Hughes* test.  Dkt. 101 at 19–26.

### 1.  CorTrans was given a reasonable opportunity to choose between two or more levels of liability

To limit liability under *Hughes*, the shipper must have a fair opportunity to choose between two or more levels of liability.  829 F.2d at 1415.  "A fair opportunity means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice."  *Id.* at 1419.  The Landstar Defendants argue that they met that standard because the Agreement's liability limitation clause provided for a $100,000 maximum liability for cargo loss and the Amendment to the Agreement gave CorTrans the opportunity to increase that maximum liability to $250,000 for specific shipments.  Dkt. 97 at 9–10.  CorTrans asserts that the available additional coverage up to $250,000 would only increase the level of cargo insurance and therefore was not a choice of liability.  Dkt. 101 at 23.

Here, Landstar's maximum liability for cargo loss under the Agreement was $100,000 and, upon request, $250,000.  *See* dkt. 102-3.  Section 9.40 of

the Agreement specifically limits the "CARRIER'S MAXIMUM LIABILITY FOR

CARGO LOSS OF, OR DAMAGE TO PRODUCT (S)" to $100,000 per shipment.

*Id.* at 4–5.  The Amendment refers to Section 9.40 and provides for an

increased limitation of liability of up to $250,000.  *Id.* at 9.  Similarly, the

Truckload Confirmation noted the $100,000 "motor Cargo coverage" per load

and recognized that "[a]t CorTrans' discretion, additional coverage of a

maximum of $250k may be requested.  CorTrans agrees to pay $120.00 to

ensure $250k coverage when necessary/requested."  Dkt. 102-7 at 3.

These three documents show that there were at least two levels of

maximum liability.  *See* dkt. 102-3 at 9.  Indeed, the Amendment specifies that

the $250,000 limit is a limitation on liability:

- "Section 9.40 of the Agreement is amended to clarify *Carrier's maximum liability*.  Dkt. 102-3 at 9 (emphasis added).
- "From time-to-time, the Parties may agree *on a higher limitation of liability* for particular shipments."  *Id.* (emphasis added).
- "Such agreement . . . shall . . . [s]pecify *the increased limitation on liability*, which may be up to, but not more than $250,000."  *Id.* (emphasis added).

While the Amendment and Truckload Pricing Agreement recognized that

coverage rates may vary based on CorTrans's choice of liability, the Agreement

and Amendment nonetheless gave CorTrans an opportunity to choose at least

between liability limits of $100,000 and $250,000.  Dkt. 102-3.  Both

documents provided the procedure for increasing the maximum liability limit to

$250,000.  *See id.*  These documents therefore establish that CorTrans had

both reasonable notice of the liability limitation and the opportunity to obtain

information necessary to making a deliberate and well-informed choice. *See Hughes*, 829 F.2d at 1419.

CorTrans cites *Nipponkoa* in support of its argument, dkt. 101 at 23. There, the contract appeared to allow a choice between levels of liability based on whether the value of the shipment exceeded $.60 per pound. *Nipponkoa*, 687 F.3d at 782–83. However, an accompanying tariff left an "ambiguous mess" about whether the higher coverage was actually a second rate option or was "exclusively the price of insurance." *Id.* Faced with that ambiguity and a lack of evidence about the parties' actions, the court found a genuine issue of material fact about whether a fair opportunity was provided. *Id.* at 783–84. Here, as explained above, the Agreement and the Amendment are clear about Cortrans' liability options.

Last, CorTrans contends that the "Supreme Court has made clear that this requirement contemplates not only a choice between levels of liability, but also a choice between rates, such that the rate paid by the shipper varies according to the liability borne by the carrier." Dkt. 101 at 25 (citing *New York, New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953)). Even if that is required, *see Hughes*, 829 F.2d at 1415, it's satisfied here because the Amendment contemplates rates that increase in relation to the liability limit. Dkt. 102-3 at 9 (An agreement for increased liability shall "[i]nclude the pricing for the shipment, including transportation costs and any additional costs for increased liability coverage."); *see* dkt. 102-7 at 3.

CorTrans therefore had a reasonable opportunity to choose between two or more levels of liability.

### 2. The Landstar Defendants obtained the shipper's agreement as to a choice of liability

The Landstar Defendants must next show that they obtained CorTrans' agreement as to a choice of liability.  *Hughes*, 829 F.2d at 1415.  The Landstar Defendants contend that CorTrans agreed to the choice of liability of $100,000 for the Shipment, which was the default limitation of liability in the Agreement. Dkt. 97 at 10.  CorTrans admits that it "had the opportunity to request a higher level of liability of $250,000 for the Cargo in question by denoting it in writing in the tariff rates."  Dkt. 101 at 24.  But it argues that there are fact questions about whether that choice was exercised.  *Id.*

CorTrans sent an email saying that it "need[ed] $250k coverage" for the Shipment, dkt. 102-5 at 10, and Landstar responded with pricing that was incorporated into the Truckload Pricing on January 11, 2016.  *See id.*; dkt. 101 at 24–25.  However, the Amendment required CorTrans to request the increased coverage "in writing via a rate confirmation."  Dkt. 102-3 at 9.  In addition to specifying the increased liability limit, the rate confirmation must "[i]nclude the pricing for the shipment, including transportation costs and any additional costs for increased liability coverage" and must "[b]e signed by an authorized representative of each Party."  *Id.*  CorTrans does not argue that it satisfied each of those requirements.  Dkt. 101 at 24–25; *see* dkt. 98-6 (rate confirmation).  So CorTrans did not do what the contract with Landstar

15

required it to do to obtain the higher limit on liability.  *See Hillenbrand Indus.,*

*Inc. v. Con-Way Transp. Servs., Inc.*, No. NA 00-0255-C-BS, 2002 WL 1461687

at *7 (S.D. Ind. June 19, 2002).

Since CorTrans did not request the higher liability limit in the way that

the Amendment mandated, it by default chose the standard $100,000 limit.

*See Nipponkoa*, 687 F.3d at 783 (noting that similar contractual terms

"suggest[ed] . . . a choice between accepting a [contractual-default] limitation of

liability or declaring a different value").  The Landstar Defendants therefore

obtained Cortrans's choice of a $100,000 limit on liability.

### 3.    A receipt or bill of lading was issued prior to moving the shipment

Last, the Landstar Defendants must show that they issued a receipt or

bill of lading prior to moving the shipment.  *Hughes*, 829 F.2d at 1415.  The

Landstar Defendants argue that the shipper issued a bill of lading prior to

shipment, which was signed by the driver on behalf of Landstar.  Dkt. 97 at 11;

dkt. 104 at 11.  CorTrans contends that the Landstar Defendants did not

satisfy this factor because the shipper—not Landstar—issued the bill of lading.

Dkt. 101 at 22.  CorTrans further argues that only the shipper and driver

signed the bill of lading and that "Landstar's name appears nowhere on the bill

of lading and there has been no evidence designated by Landstar to indicate

otherwise."  *Id.* at 22–23.

CorTrans cites no authority where a court has found that a liability

limitation clause did not apply simply because the shipper, rather than the

carrier, issued the bill of lading.  *See* dkt. 101 at 23.  Instead, *Hughes*'s focus is on notice and an agreement to liability limitations.  *Hillenbrand Indus.*, 2002 WL 1461687, at *5 ("[N]otice and agreement were the overarching concerns.").  There is therefore "no need to abandon *Hughes* . . . to focus on which party drafted the bill of lading."  *Id.*; *see Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1271–73 (11th Cir. 2001).  Here, both parties signed the Rate Confirmation, which provided details about the Shipment, prior to pick-up.  *See* dkt. 102-8.  In addition, the bill of lading did not contain any additional information about limitations on liability.  *See* dkt. 98-8.  It only stated generally: "Liability Limitation for loss or damage in this shipment may be applicable.  *See* 49 U.S.C. [] 14706(c)(1)(A) and (B)."  *Id.*  Therefore, CorTrans had notice of the liability limitation clause before the bill of lading was issued.  *See* dkt. 102-3.

CorTrans also does not cite any authority showing that the bill of lading is insufficient because it was signed by a driver rather than by a Landstar employee.  The Landstar Defendants contracted with another company to transport the Shipment, *see* dkt. 98-7—despite retaining legal responsibility for the Shipment under the Agreement, dkt. 102-3—and a driver from that company signed the bill of lading.  For the narrow purpose of analyzing whether a bill of lading was signed and issued in this case, the driver was acting on Landstar's behalf.

Accordingly, the Landstar Defendants have established that a bill of lading was issued for the Shipment.  The designated evidence therefore

17

demonstrates that the Landstar Defendants have satisfied each *Hughes* factor, limiting their liability under the Carmack Amendment to $100,000.[4]

### D.    The Material Deviation Doctrine

CorTrans argues that the liability limitation should be set aside because the Landstar Defendants materially deviated from the special security requirements contained in the Special Circumstances Standards of Care that accompanied the Rate Confirmation.  Dkt. 101 at 26–30.  The Landstar Defendants respond that only a minority of courts have applied the material deviation doctrine to contracts governed by the Carmack Amendment.  Dkt. 104 at 13.  They contend that policy reasons militate against adopting the doctrine in the Carmack Amendment context.  *Id.* at 14.

The "material deviation" argument is derived from an admiralty doctrine under which a fundamental deviation from a shipping contract may make a liability limitation unenforceable.  *Praxair Inc. v. Mayflower Transit*, 919 F. Supp. 650, 654 (S.D.N.Y. 1996).  A majority of jurisdictions, including the Seventh Circuit, have not addressed its application to Carmack Amendment cases.  Courts that have addressed the issue generally have held that the material deviation doctrine does not apply.  *See, e.g., Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369, 1372 (8th Cir. 1974) ("[A]dmiralty law doctrine has no application in the context of regulated interstate commerce,

---

[4] Because the liability limitation applies under the Carmack Amendment, the Court does not address the Landstar Defendants' argument that "even disregarding Carmack," liability is limited to $100,000 under Delaware contract law.  *See* dkt. 104 at 12–13.

which is governed by the overriding federal policy of uniformity."); *KLLM, Inc. v. Watson Pharma, Inc.*, 634 F. Supp. 2d 699, 708 (S.D. Miss. 2009) ("Significantly, Congress has statutorily regulated both admiralty and motor carrier law, and it has never seen fit to adopt a material deviation doctrine in the later context.").

In adopting the Carmack Amendment, Congress intended to impose a single uniform federal rule upon the obligations of carriers operating in interstate commerce. *Nothnagle*, 346 U.S. at 131. It later amended the Carmack Amendment to allow carriers to limit their liability. 49 U.S.C. § 14706(c)(1)(A). Since the amendment, Congress has not adopted a material deviation doctrine. CorTrans has not shown that any statute or binding authority requires the Court to impose the material deviation doctrine here, and the Court declines the invitation to create such an exception to a carefully crafted legislative framework.

Indeed, the Carmack Amendment imposes a regime akin to strict liability upon the carrier for the value of the cargo. *See* 49 U.S.C. § 14706; *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 286 (7th Cir. 1997); *N. Am. Van Lines v. Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996). CorTrans, a sophisticated business entity, could have negotiated higher levels of liability. It also could have negotiated an agreement that kept the Carmack Amendment's presumption of "full value" liability instead of an agreement that limited liability. Those options undermine the need for a material deviation doctrine in cases like this one.

**IV.**

**Conclusion**

Defendants' motion for summary judgment, dkt. [96], is **GRANTED**.  The

liability limitation clause is enforceable and caps the recovery for the Shipment

to $100,000.  CorTrans' state-law claims regarding the Shipment are

preempted by the Carmack Amendment.

**SO ORDERED.**

Date: 9/23/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Erin A. Clancy
KIGHTLINGER & GRAY LLP
eclancy@k-glaw.com

James L. Culp
WHITTEN LAW OFFICE
jculp@indycounsel.com

Rebecca L. Didat
WATERS, TYLER, HOFMAN & SCOTT, LLC
rdidat@wthslaw.com

Jordan M. Slusher
KIGHTLINGER & GRAY, LLP (Indianapolis)
jslusher@k-glaw.com

Scott Lee Tyler
WATERS TYLER SCOTT HOFMANN & DOANE LLC
styler@wthslaw.com

Christopher R. Whitten
WHITTEN LAW OFFICE
cwhitten@indycounsel.com